IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRIGHT HAND LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on the Attached Schedule A,**<br><br>Defendants. | Case No. 25-cv-03568<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT**

Plaintiff Bright Hand LLC (referred to herein as "Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**I.    JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois

1

residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. The existence of the Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market, a market within which Plaintiff should have exclusionary rights under its patent.

4. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented invention, as well as

to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. THE PARTIES

5. Plaintiff, Bright Hand LLC, is a Delaware limited liability company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901.

6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of the invention claimed in ▇▇▇▇▇▇ has resulted in significant infringement of Plaintiff's Patent. The significant infringement has hampered Plaintiff's ability to generate and expand market share for its ▇▇▇▇▇▇▇▇▇▇. Because of this, Plaintiff has

4

implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc., ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

15. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**). While the report set forth in Exhibit 3 refers to trademark counterfeiting, the same tactic is used by infringers of other intellectual property rights; including, as here, patent infringers who sell direct to consumers or bulk ship products to third party marketplaces.

16. As described in the report attached as Exhibit 3, counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, and, as a result, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs

that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*. Again, these statistics are similarly applicable to other types of infringement, including patent infringement.

17. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "*Combating Trafficking in Counterfeit and Pirated Goods*" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

18. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

20. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like

Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

23. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

24. E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

25. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce

8

store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

26. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patents in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

27. Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patents in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – ▮▮▮▮▮

28. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold,

and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly ▮.

30. As shown in the exemplary claim charts attached hereto as **Exhibit 6**, the products being sold by Defendants infringes at least Claim 1 of ▮. The claim charts of **Exhibit 6** are illustrative only and are made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of ▮.

31. Specifically, Defendants have infringed and continue to infringe each and every claim of ▮ by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

32. Defendants have profited by their infringement of ▮, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

33. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of ▮ in connection with the offering to sell, selling, or importing of products that infringe ▮, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

34. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

35. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the '377 Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

36. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

37. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

38. Despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patent. *See* **Exhibit 2** and **Exhibit 6**. These acts of infringement have prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field.

39. By selling products which infringe upon Plaintiff's Patent, Defendants are competing for sales with Plaintiff and Plaintiff's Products with products that Defendants are prohibited from selling under U.S. Patent law.

40. By selling products which infringe upon Plaintiff's Patent, Defendants are competing for sales against Plaintiff in an unfair and unlawful manner.

41. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff ███████████ ███████████, allowing Defendants to profit from the goodwill, time, research, and development of the invention as embodied in Plaintiff's Patent and in Plaintiff's embodying Products, while causing Plaintiff irreparable and immeasurable injury.

42. On information and belief, Defendants have intentionally and blatantly infringed upon Plaintiff's Patent by selling Unauthorized Products to take unfair advantage of the enormous time, effort, and expense spent in connection with ███████ and Plaintiff's efforts to cultivate a successful market for the invention embodied in Plaintiff's Patent and in Plaintiff's Products in online marketplaces.

43. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

44. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

45. Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

46. Specifically, Defendants have been observed engaging in the following unlawful activities:

   a. Exploitation of Marketplace Accounts: Defendants systematically divert funds from marketplace accounts into personal or untraceable accounts, thereby unlawfully extracting financial resources from the marketplace.

   b. Unlawful Storefront Closure: Upon being detected or facing financial scrutiny, Defendants promptly close their storefronts to avoid further investigation or legal consequences.

   c. Reopening Under New Entities: after closing the storefronts, Defendants frequently reopen new business entities or storefronts under different names, thereby circumventing legal and financial accountability and continuing their infringing activities.

47. Collectively, these actions constitute unfair competition as Defendants mislead consumers, undermine fair market practices, and harm both the integrity of the marketplace and legitimate competitors.

48. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products which infringe Plaintiff's Patents, constitutes unfair competition.

49. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) That Plaintiff be awarded its reasonable attorneys' fees and costs.

10) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: April 2, 2025            Respectfully submitted,

/s/ Nicholas S. Lee
Nicholas S. Lee
nslee@dickinson-wright.com
Sameeul Haque
shaque@dickinson-wright.com
DICKINSON WRIGHT, PLLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312)641-0060
Facsimile: (844) 670-6009

*Counsel for Plaintiff, Bright Hand LLC*

## VERIFICATION

I, Sason Gabay, hereby certify as follows:

1. I am the Chief Executive Officer for Bright Hand LLC. As such, I am authorized to make this Verification on Bright Hand LLC's behalf.

2. I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in  New York  on March  31 , 2025

*Sason Gabay*
_____
Sason Gabay
CEO
Bright Hand LLC

4899-2101-0224 v1 [114485-1]